STATE OF NORTH CAROLINA v. EDDIE LEE FARRINGTON

No. 7815SC991

(Filed 20 March 1979)

1. Criminal Law § 122.1— additional instruction at jury's request—failure to give additional instructions on other matters

Where the trial court in a felonious assault case gave additional instructions on intent at the jury's request, a juror stated that there was something either in the court's instructions or elsewhere about the effect of the fact that a person was shot while fleeing had on intent to kill, and the court stated that such was not in his instructions but was probably in the argument of the attorneys, the court did not err in failing to give additional instructions that in-

tent to kill may not be presumed from evidence of an assault with a deadly weapon, that jurors should disregard the statements of counsel and take the law from the court, or on the burden of proof, since it is presumed that the trial court originally gave proper instructions on those matters, the full charge not being in the record, and since the court was not required to repeat other portions of the charge which were unnecessary to answer the jury's question.

**2. Criminal Law § 122— additional instructions—necessity for informing parties**

The trial judge did not violate G.S. 15A-1234 by failing to inform the parties of instructions he intended to give when, in response to a question by the jury, he repeated or clarified instructions previously given, since the statute applies only when the judge gives "additional instructions" which add to the previous charge because of omissions therein.

**3. Assault and Battery § 14.4— felonious assault—sufficiency of evidence**

The State's evidence was sufficient for the jury in a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury where it tended to show that defendant and the victim argued in a pool hall, both went outside and defendant shot the victim in the leg, the victim was hospitalized for a month and incurred medical expenses of $8,000, and the victim had no weapon as contended by defendant.

APPEAL by defendant from *Farmer, Judge.* Judgment entered 8 June 1978 in Superior Court, ORANGE County. Heard in the Court of Appeals 6 February 1979.

The defendant was indicted for assault with a deadly weapon with intent to kill inflicting serious injury, a violation of G.S. 14-32(a), and entered a plea of not guilty. The jury returned a verdict of guilty as charged. From judgment sentencing him to imprisonment for a term of not less than 12 years nor more than 15 years, the defendant appealed.

Evidence for the State tended to show that Bobby Lee Smith was a public safety officer for the town of Chapel Hill and on the evening of 29 April 1977 was off duty and at Atwater's game room playing pool. Smith knew both the defendant and Anthony "Tello" Brooks and saw them at the poolroom about 10:20 p.m. Smith overheard an argument, and Brooks left Atwater's. Immediately thereafter, the defendant left the building, and Smith heard two or three gun shots within one half minute of their leaving. Smith immediately went outside and found Brooks lying on his back. Smith saw a wound on the left leg of Brooks and gave him emergency treatment for the wound. Smith did not participate in the investigation of the shooting and did not see a weapon or a knife on the person of Brooks.

Brooks and the defendant had been friends for many years and were in Atwater's to play pool. They bet $1.00 on a game and the defendant won and then demanded $2.00. An argument ensued and the defendant started talking about "busting a cap in his ass". Brooks did not have a weapon on him, and when Smith intervened in the poolroom, Brooks went outside. He was warned that the defendant had a gun after he left the poolroom and saw the defendant inside the door of Atwater's unstrapping a gun from his leg and thereafter ran down an alley. Brooks heard a shot and was knocked to the ground. He testified that the defendant said to him, "I'm going to go on and kill you", but that the defendant ran when they heard sirens. Brooks suffered a severe leg wound, was hospitalized for one month, and wore a body cast approximately three months. Medical expenses were approximately $8,000.

Dave Hill, a detective with the Chapel Hill Police Department, conducted the investigation and testified that no knife was found during a "criss cross search" of the alley.

At the close of the State's evidence, defendant moved to dismiss on the grounds that the State had failed to present sufficient evidence to go to the jury and that there was insufficient evidence of an intent to kill to support a verdict of guilty. The motion was denied.

Evidence for the defendant tended to show that the defendant won the pool game and that Brooks argued and refused to pay him. Officer Smith interrupted the argument and punched Brooks in the back. When defendant left Atwater's, Brooks came at him swinging a knife. Brooks cut the left shoulder of his coat with his knife and on his thigh, and he then drew his gun and fired downward to scare him off. Defendant saw a knife in Brooks' hand and the blade was approximately two to three inches long. Defendant then went over to Brooks and helped him up, but defendant heard sirens and put Brooks down and left the scene. He went home and he had no intent to kill the witness. Defendant testified he threw the gun in some bushes and no longer had it.

Defendant's wife testified that he returned home about 11:00 p.m. that night and that his suit jacket was torn, and his pants leg had a cut in it. His right leg was cut about two inches across. He was bandaged at home, and she did not take him to the hospital.

Defendant renewed his motion to dismiss at the close of all the evidence, and it was denied by the court.

*Attorney General Edmisten, by the Assistant Attorney General Sandra M. King for the State.*

*Levine and Stewart, by Mary C. Tolton, for defendant appellant.*

CARLTON, Judge.

[1] Defendant first contends that the trial court erred in not instructing the jury properly in response to a question about intent and in failing to caution the jury against presumptions not arising from the evidence. We find no merit in this contention.

Defendant assigns no error to the court's original charge and did not include the full charge in the record on appeal. However, after the jury began deliberations, and before a verdict was reached, the jury returned to the courtroom and the following exchange took place:

> JUROR: Yes, we would like a more . . . like a review of the specific definition of intent, intent to kill and also . . . .

> COURT: The Court will instruct you on what intent means, and you can apply that to the charge that I have given you concerning the word intent or intentional would be applicable in all cases regarding intent.

> A person acts intentionally for purposes of this particular crime when it's his intent to cause in case (the) of (the) assault with a deadly weapon with intent to kill, it would be when it's his intent to cause the death of another or if it's in intent to kill, that is referring to the death. When it's causing serious injury, it is the intent to cause some serious injury. Intent is a mental attitude that is probably seldom provable by any direct evidence; and it must be proved by circumstances from which it may be inferred an intent to kill someone may be inferred from the act itself, the nature of the assault, the conduct of the defendant at the time, and any other relevant circumstances at the time. That is about as much as I can give you as far as the intent. It is something as I've said that you cannot prove by direct evidence. It has to

be inferred if you so find it. Do you have any other questions
that . . .

JUROR: Just a moment. Does that answer your question?
(To another juror) . . .

SECOND JUROR: The question somewhere came along
either in your instructions or some of the other about if it
were found that some — a person were fleeing and was shot
that that had some implications on intent to kill and that was
where we were.

COURT: That was not in my instructions. Probably in the
argument to you by attorneys, no other questions, you may
continue with your deliberations.

Defendant argues that the jury not only appeared to be in
doubt as to the specific definition of intent, but also as to the
weight to be given the evidence and the arguments of counsel, as
well as to the permissible inferences that might arise from the
evidence. He argues that the jury appeared to believe that it
could presume an intent to kill if it believed that the defendant
fired at Brooks as Brooks was running away. Accordingly, he
argues that the court should have further instructed the jury that
the intent to kill may not be presumed simply from the evidence
of an assault with a deadly weapon. He further argues that the
trial court should have better clarified the issue with an instruc-
tion on the burden of proof and should have told the jurors to
disregard the statements of counsel and take the law from the
court.

Since the full charge is not included in the record on appeal,
we must conclude that it was proper. Indeed, defendant admits in
his brief that he made no exception to the charge. We must
therefore assume that the trial court had originally given proper
instructions with respect to presumption, burden of proof and
other matters about which the defendant now complains. When a
jury returns into court and requests additional instructions, the
court is not required to repeat other portions of the charge un-
necessary to answer the particular question. 4 Strong, N. C. Index
3d, Criminal Law, § 122.1, p. 642; *State v. Gantt*, 26 N.C. App.
554, 217 S.E. 2d 3 (1975); *State v. Hargett*, 23 N.C. App. 709, 209
S.E. 2d 541 (1974); *State v. Hamilton*, 23 N.C. App. 311, 208 S.E.
2d 883 (1974).

In *State v. Hargett, supra,* the defendant assigned as error the failure of the trial court to repeat its instructions on self defense when the jury asked for additional instructions on the element of intent. Defendant conceded that the instructions on self defense and intent were correct. He argued, however, that since self defense and intent both relate to the defendant's state of mind, the court should have repeated its instructions on self defense when the jury requested further instructions as to intent. This Court found the trial court's additional instructions to be proper. Judge Hedrick stated, "When the trial judge has complied with a request by the jury for additional instructions on a particular point in the case, it is not incumbent on him to repeat his instructions as to other features of the case already correctly given."

In the case at bar, the trial court's additional instructions on intent were proper. Indeed, defendant offers no argument to the contrary.

Our legislature has codified the long-standing rule which allows the judge to give appropriate additional instructions in response to an inquiry of the jury made in open court after the jury retires for deliberation. G.S. 15A-1234. Subsection (c) of that statute provides as follows:

> (c) Before the judge gives additional instructions, he must inform the parties generally of the instructions he intends to give and afford them an opportunity to be heard. The parties upon request must be permitted additional argument to the jury if the additional instructions change, by restriction or enlargement, the permissible verdicts of the jury. Otherwise, the allowance of additional argument is within the discretion of the judge.

[2] Defendant argues that the trial judge violated this statute in that he did not inform the parties of the instructions he intended to give. We do not believe the legislative intent to be so literal. If the trial judge planned to give "additional instructions" in order to *add to* his previous charge because of omissions therein, then we might agree with defendant that the judge would be required under this statute to inform the parties of the instructions he intended to give. However, in a case such as this, when he is repeating or clarifying instructions previously given in response

State v. Farrington

to the jury's question, we do not believe these to be "additional instructions" as contemplated under subsection (c). Moreover, in a situation such as this involving an exchange of questions and answers between the court and the jury, it would obviously be cumbersome, impractical and unnecessary for the court to confer with counsel before answering each question put to him by the jury. It is inconceivable to us that the legislature intended to require such a procedure. This assignment of error is overruled.

[3] Defendant's remaining assignment of error is that the trial court improperly denied his motion for dismissal at the close of the evidence. A motion for dismissal in a criminal case requires consideration of the evidence in the light most favorable to the State. The State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is considered by the court in ruling upon the motion. 4 Strong, N.C. Index 3d, Criminal Law, § 106, p. 547; *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975). Applying the stated rules to the facts as disclosed by the record in the case at bar, we find the trial court's decision to be clearly proper, and this assignment of error is overruled.

We find that the defendant received a fair trial, free from prejudicial error.

No error.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.